## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**LISA FARVER**                                    **NO. 1:10-CV-1927**

**v.**                                             **JUDGE CONNER**

**COVENTRY HEALTH CARE, INC.**          **MAGISTRATE JUDGE METHVIN**

### REPORT AND RECOMMENDATION
### ON MOTION FOR SUMMARY JUDGMENT
*(Doc. 16)*

Plaintiff, Lisa Farver, filed this action against her former employer,

Coventry Health Care, Inc. ("CHC") on September 15, 2010, alleging retaliation

and violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-

2654. (Doc. 1). Farver contends that she was terminated from her employment

within days of requesting leave under the FMLA.

Before the court is CHC's motion for summary judgment.[1] The motion has

been referred to the undersigned for a report and recommendation, and is now ripe

for disposition.

---

[1] CHC filed the motion for summary judgment, a supporting brief and a statement of material fact on August 30, 2011. (Docs. 16, 17, 18). Farver filed a brief in opposition to the motion and a statement of material facts on September 19, 2011 (Docs. 21, 22), to which CHC filed a reply brief on October 7, 2011 (Doc. 25).

2

**FINDINGS AND RECOMMENDATIONS**

## I. Background

The factual background is viewed in the light most favorable to Farver, as non-movant.

CHC is a company that provides health care services, including health insurance. Farver began her employment with CHC on October 17, 2001. (Docs. 18, 22 ¶ 2). Performance evaluations of Farver's work in 2008 and 2009 were positive and rated Farver as successful overall. (Doc. 22, ¶ 6; Doc. 17-6, Ex. B). In March, 2009, Farver was promoted to the position of Information Administrator, which resulted in a 9% pay increase. (Doc. 22, ¶ 49).

Farver's direct supervisor at CHC  was Angel Simpson who, in turn, was supervised by Edna Hetrick. (Docs. 17, 22 ¶ 15). On June 10, 2009, Hetrick sent Farver an email, bringing to her attention a reporting error caused by Farver's transposition of numbers. (*Id*. at ¶ 15). Following this email, on June 12, 2009, Farver met with Simpson and Hetrick in a verbal counseling session. (*Id*. at ¶ 17). Simpson testified that the majority of these one-on-one meetings addressed the quantity, not quality, of Farver's work, as the department was understaffed. (Doc. 22, ¶ 17; Doc. 22-2, p. 20 (deposition p. 62)). A report of the June 12, 2009 counseling session notes three errors made by Farver and observes that she was

3

counseled on the quality of her work. (Doc. 17-12, Ex. H). The report specifically

identified an error made on May 14, 2009, in which Farver "processed a file from

April 2008 in error" resulting in "over 935 members receiv[ing] ID cards in error."

(*Id*). Farver concedes that this error was serious. (Docs. 18, 22 ¶ 20).

The report also states that Farver was advised of the need for improvement

in her work. (*Id*. at ¶ 23). Additionally, the report warned that "[a]ny reoccurrences

in incorrect file processing or incorrect information . . . may result in additional

performance action up to and including termination." (Doc. 17-12, Ex. H). The

report was signed by both Farver and Hetrick. (*Id*.; Docs. 18, 22 ¶ 25).

On July 8, 2009, Farver's husband was injured in a work-related accident.

(Docs. 18, 22 ¶ 27). Farver requested that she be allowed to work from home,

which was approved by Simpson and Hetrick. (*Id*. at ¶ 29). On August 2 or 3,

2009, Simpson advised Farver that Hetrick required her to work in the office as of

August 5, 2009. (*Id*. at ¶ 30). Farver testified that she informed Simpson that she

would need to use FMLA leave if she would be unable to work at home. (Doc. 22,

¶ 54). Simpson, too, believed it was necessary for Farver to take FMLA leave. (*Id*.

at ¶ 73). A performance evaluation conducted on August 5, 2009 described

Farver's work performance as "successful." (Doc. 22, ¶ 53).

4

According to CHC, on August 5, 2009, it also learned of an error that occurred on July 16, 2009 involving incorrect processing, attributed to Farver. (Doc. 22-2, Ex. 2, p. 31). On that date, Simpson and Hetrick met with Katherine Frey, the director of human resources, and Mark Hopkins, also a member of CHC's human resources staff, to discuss the situation. (Doc. 22, ¶ 40; Doc. 22-3, Ex. 3, p. 6:19–23, 7:1–3). Frey and Hopkins decided to terminate Farver based on the recommendation of Simpson and Hetrick. (*Id*. at 40; Doc. 22-3, Ex. 4, p. 19:4–13, 20:10–14). The decision was based solely on the July 16 error and not other incidents of poor performance. (Doc. 22-3, Ex. 4, p. 20:6–9). Frey was unaware of Farver's FMLA leave inquiry. (Docs. 18, 22 ¶ 42).

The present action followed. Farver seeks, *inter alia.*, back pay and front pay, punitive damages and attorneys fees.

## II. Issues Presented

CHC seeks summary judgment on the following grounds:

1.    Farver is unable to establish a prima facie case of retaliation under the FMLA.

2.    Farver is unable to establish a prima facie case of interference under the FMLA.

5

## III. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure states that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).[2] A fact is material if its determination might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.*

Initially, the moving party bears the burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325.

If the moving party carries this initial burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial" and do more than "simply show that there is some metaphysical doubt as to the

---

[2] The language of Rule 56 was revised by amendment effective December 1, 2010. However, "[t]he standard for granting summary judgment remains unchanged," and "[t]he amendments will not affect continuing development of the decisional law construing and applying these phrases." Fed.R.Civ.P. 56 advisory committee's note to 2010 Amendments.

6

material facts." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (citing

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)

(internal quotation marks omitted)). The nonmoving party cannot rely upon

unsupported allegations in the pleadings. *Celotex Corp. v. Catrett*, 477 U.S. 317,

322–23 (1986). Further, arguments made in briefs "are not evidence and cannot by

themselves create a factual dispute sufficient to defeat a summary judgment

motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103,

1109–10 (3d Cir. 1985).

The Court must view the facts in a light most favorable to the non-moving

party, and the "existence of disputed issues of material fact should be ascertained

by resolving 'all inferences, doubts and issues of credibility against the moving

party.'" *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (quoting

*Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). *See*

*also Anderson*, 477 U.S. at 242. Final credibility determinations on material issues

cannot be made in the context of a motion for summary judgment, nor can the

court weigh the evidence. *Josey v. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir.

1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.*, 998 F.2d

1224 (3d Cir. 1993).

7

At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251–52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 794 (3d Cir. 2007).

## IV. Discussion

### A. FMLA

The FMLA was enacted to balance the demands of the workplace with the needs of employers and to entitle employees to take reasonable leave for medical reasons. 29 U.S.C. § 2601(b). To accomplish these goals, the act provides that an eligible employee is entitled to 12 work-weeks of leave during any given 12-month period for certain qualifying events, including a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA further entitles eligible employees to reinstatement at the end of FMLA leave to the position of

8

employment held before leave or to an "equivalent position." 29 U.S.C.

§§ 2614(a)(1)(A), (B).[3]

There are two relatively distinct causes of action under the FMLA:

(1) interference provisions declare it unlawful for any employer to interfere with,

restrain, or deny the exercise of or the attempt to exercise, any right provided in

FMLA, and (2) the statute prohibits an employer from discriminating or retaliating

against an employee for exercising rights under the FMLA. 29 U.S.C.A. § 2615(a)

(1, 2). The complaint brings claims for both causes of action. *See Hayduk v. City

of Johnstown,* 386 F. App'x. 55, 59 (3d Cir. 2010) (noting that an employee

alleging a discharge in violation of the FMLA may proceed under both theories of

recovery) (citing *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir.2009)

(holding that "firing an employee for a valid request for FMLA leave may

constitute interference with the employee's FMLA rights as well as retaliation

against the employee" (footnote omitted)).

---

[3] An equivalent position is one which is substantially equal or similar in terms of
employment benefits, pay, and other terms and conditions of employment. 29 U.S.C.
§ 2614(a)(1)(B); 29 C.F.R. § 825.215

9

*B. Has Farver established a prima facie case of retaliation?*

An FMLA retaliation claim is contemplated by section 815.220(c)[4] of the regulations implementing 29 U.S.C. § 2615(a). 29 C.F.R. § 825.220(c) FN5; *see Conoshenti v. Public Service Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir.2004). Retaliation claims are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case for retaliation under the FMLA, a plaintiff must show that (1) she took FMLA leave, (2) she suffered an adverse employment decision, and (3) the adverse decision was causally related to her leave. *Conoshenti*, 364 F.3d at 146.

Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason which provides a basis for plaintiff's discharge. *McDonnell Douglas*, 411 U.S. at 802. If the employer can meet this burden, then the burden shifts back to the employee to

---

[4] 29 C.F.R. § 825.220(c) provides:

> (c) An employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under "no fault" attendance policies.

10

prove, by a preponderance of the evidence, that the reasons articulated by the defendant were actually a pretext for discriminatory practices. *Id.* at 804. Summary judgment is appropriate on behalf of the employer if the employee fails to meet her burden at either the prima facie or pretext stage of the framework.

For purposes of the instant motion, CHC concedes that the first element of a prima facie case of retaliation under the FMLA is undisputed: Farver availed herself of a protected right under the FMLA. (Doc. 17, p. 5 and n.2). CHC also does not dispute that Farver can demonstrate the second element—an adverse employment action. Conduct which "alters the employee's 'compensation, terms, conditions, or privileges of employment,' deprives him or her of 'employment opportunities,' or 'adversely affects his or her status as an employee'" is proscribed by Title VII.[5] *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997), *overruled in part on other grounds by Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 60 (2006) *and by Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 753-54 (1998). Here, Farver contends she suffered an adverse employment action when she was discharged from her employment with CHC. Such an averment clearly constitutes an adverse employment action.

_____

[5] "In analyzing retaliation claims under the FMLA, courts look to the legal framework established for Title VII claims." *Hicks v. The Tech Indus.*, 512 F. Supp.2d 338, 357 (W.D. Pa.2007).

11

CHC's sole argument on the prima facie case issue is that Farver is unable

to establish a the third factor—that her termination was causally connected to her

exercise of her FMLA rights. With respect to causation, Third Circuit cases focus

on two main components: timing and evidence of ongoing antagonism. *Abramson*

*v. Wm. Patterson College of N.J.*, 260 F.3d 265, 288 (3d Cir.2001) ("Temporal

proximity ... is sufficient to establish the causal link. [A] plaintiff can [also]

establish a link between his or her protected behavior and subsequent discharge if

the employer engaged in a pattern of antagonism in the intervening period.").

"[T]he mere fact that adverse employment action occurs after [a protected activity]

will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a

causal link between the two events." *Robinson v. City of Pittsburgh*, 120 F.3d

1286, 1302 (3d Cir.1997) (*abrogated on other grounds*, *Burlington No. & Santa*

*Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). However, if "the timing of the alleged

retaliatory action is 'unusually suggestive of retaliatory motive' a causal link will

be inferred." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir.1997). *See*

*also Pressley v. Johnson*, 268 F. App'x 181, 185 (3d Cir.2008) ("for an inference

of retaliation to be plausible, there must not be a significant gap in time between

the exercise of protected activity and the purported act of retaliation") (citing

*Black v. Lane*, 22 F.3d 1395, 1407 (7th Cir.1994)). *See also Farrell v. Planters*

12

*Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir.2000) (if the timing of the events is not "unduly suggestive," the plaintiff can still show a causal link with other circumstantial evidence, such as evidence of ongoing antagonism or inconsistent reasons for terminating the employee).

CHC contends that the Court of Appeals has been "highly dubious" that temporal proximity alone is sufficient to establish a causal link. In the absence of very close temporal proximity suggestive of retaliation, additional evidence is required for a causal connection to be made. *Williams v. Philadelphia Housing Authority Police Department*, 380 F.3d 751, 760 (3d Cir.2004). However, adverse employment actions occurring within days of the protected activity have been found to be "unusually suggestive" of retaliation. *See, e.g.*, *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir.1989) (holding that a causal link can be inferred where only two (2) days passed between the employee's protected activity and the adverse employment action); *Whitman v. Proconex, Inc.,* No. 08-2667, 2009 WL 141847, at * 10-12 (E.D. Pa. Jan.20, 2009) (finding that discharge within minutes of returning from FMLA leave was "unduly suggestive" of a causal link); *Reinhart v. Mineral Techs. Inc.*, No. 05-4203, 2006 WL 4050695, at *10-11 (E.D. Pa. Nov.27, 2006) (finding that the decision to terminate an employee within twenty-four (24) hours after returning from his initial FMLA leave met "the bare

13

minimum of sufficiency to establish causation"). Here, Farver alleges she was discharged within two or three days of requesting FMLA leave. Such temporal proximity between inquiring about and/or requesting FMLA leave, and discharge, is sufficient to establish a causal connection between the two events for purposes of establishing a prima facie case.

A prima facie case of retaliation having been established, the burden shifts to the CHC to articulate a legitimate non-discriminatory reason for its actions. In the present matter, CHC submits that Farver job performance was deficient, and that she committed a significant error when, on July 16, 2009, she processed a file that had previously been processed. Moreover, CHC asserts that this error was not discovered until August 5, 2009, at which time, and because of which, she was fired. This averment satisfies CHC's burden, and the burden therefore shifts back to the Farver to establish the proffered reasoning is pretextual for retaliation. *See e.g.*, *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d Cir.1997) (noting that the defendant's burden at this stage is relatively light and that it is satisfied if the defendant articulates a legitimate reason for the adverse employment action).

To rebut CHC's proffered reason and demonstrate pretext, Farver must offer evidence "from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious

14

discriminatory reason was more likely than not a motivating or determinative

cause of the employer's action." *Showalter v. Univ. of Pittsburgh Medical Center*,

190 F.3d 231, 235 (3d Cir. 1999); *Keller v. Orix Credit*, 130 F.3d 1101, 1108 (3d.

Cir. 1997). "To discredit the employer's proffered reason, the plaintiff cannot

simply show that the employer's decision was wrong or mistaken

 . . . Rather, the non-moving plaintiff must demonstrate such weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

proffered legitimate reasons for its action that a reasonable fact finder could

rationally find them 'unworthy of credence.'" *Fuentes v. Perskie*, 32 F.3d 759, 765

(3d. Cir. 1994) (citation omitted). The court must then determine whether the

plaintiff's evidence is sufficient "to permit a reasonable fact finder to conclude

that the [employer's] reasons are incredible[.]" *Sheridan v. E.I. DuPont De*

*Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir. 1996).

Farver contends that CHC's assertion that she had a pattern and practice of

poor performance is not worthy of credence because Farver's performance reviews

were favorable, not only in the year prior to her termination, but also on the very

date of her termination. These reviews rated her work performance as successful.

Regardless of whether Farver believed that the error committed on July 16, 2009

would or could result in her discharge, it is contradictory of CHC to contend that

Farver's work performance was inadequate and that it had been displeased with her efforts, yet at the same time issue favorable performance reviews, including one on the day she was terminated.

Inasmuch as all facts must be viewed in a light most favorable to Farver as the non-movant, for purposes of this summary judgment motion Farver has put forth facts which, if believed, could tend to cast doubt on the reason CHC has articulated for her discharge. Consequently, having established facts upon which the fact-finder could conclude that CHC's reasons were pretextual, the motion for summary judgment should be denied on this issue.

*C. Has Farver established an interference claim?*

The amended complaint also states a cause of action for interference with Farver's rights under the FMLA. To prove an FMLA interference claim, "the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them." *Sommer v. The Vanguard Group*, 461 F.3d 397, 399 (3d Cir.2006). Interference includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b).

Pursuant to the FMLA and related regulations, "when an employee provides notice of the need for FMLA leave, the employer shall provide the employee with notice detailing the specific expectations and obligations of the employee and

explaining any consequences of a failure to meet these obligations." 29 C.F.R.

§ 825.301(b)(1). An employer interferes with the exercise of FMLA rights if it

fails to provide the employee who gives notice of the need for FMLA leave

written notice detailing the specific expectations and obligations and resulting

consequences. *See* 29 U.S.C. § 2615(a)(1); *Parker v. Hahnemann Univ. Hosp.*,

234 F. Supp. 2d 478, 483 (D.N.J.2002).

To state a claim for interference under the FMLA, a plaintiff must show

that: (1) she was an eligible employee under the FMLA; (2) the defendant was an

employer subject to the FMLA's requirements; (3) the plaintiff was entitled to

FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention

to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she

was entitled under the FMLA. *Johnson v. Community College of Allegheny*

*County*, 566 F. Supp.2d 405, 446 (W.D. Pa.2008). An employee need not

specifically mention the FMLA or assert rights under it to satisfy the notice

requirement. 29 C.F.R. § 825.302(c); *Wilson v. Lemington Home for the Aged*, 159

F. Supp.2d 186, 192 (W.D. Pa.2001).The employee need only state that leave is

needed. *Id*.

Farver argues that CHC interfered with her FMLA rights on two separate

occasions. She asserts first that her authorization to work from home to care for

her husband violated §825.220(d).[6] Additionally, Farver contends that, upon being

notified that she was to return to work on August 2 or 3, she informed CHC that

she was unable to do so and would need to exercise family medical leave.  Her

---

[6]  (d) Employees cannot waive, nor may employers induce employees to waive, their
prospective rights under FMLA. For example, employees (or their collective bargaining
representatives) cannot "trade off" the right to take FMLA leave against some other
benefit offered by the employer. This does not prevent the settlement or release of FMLA
claims by employees based on past employer conduct without the approval of the
Department of Labor or a court. Nor does it prevent an employee's voluntary and
uncoerced acceptance (not as a condition of employment) of a "light duty" assignment
while recovering from a serious health condition (see § 825.702(d)). An employee's
acceptance of such "light duty" assignment does not constitute a waiver of the employee's
prospective rights, including the right to be restored to the same position the employee
held at the time the employee's FMLA leave commenced or to an equivalent position. The
employee's right to restoration, however, ceases at the end of the applicable 12–month
FMLA leave year.

29 CFR § 825.220(d) provides:

> Employees cannot waive, nor may employers induce employees to waive, their
> prospective rights under FMLA. For example, employees (or their collective
> bargaining representatives) cannot "trade off" the right to take FMLA leave
> against some other benefit offered by the employer. This does not prevent the
> settlement or release of FMLA claims by employees based on past employer
> conduct without the approval of the Department of Labor or a court. Nor does it
> prevent an employee's voluntary and uncoerced acceptance (not as a condition of
> employment) of a "light duty" assignment while recovering from a serious health
> condition (see § 825.702(d)). An employee's acceptance of such "light duty"
> assignment does not constitute a waiver of the employee's prospective rights,
> including the right to be restored to the same position the employee held at the
> time the employee's FMLA leave commenced or to an equivalent position. The
> employee's right to restoration, however, ceases at the end of the applicable
> 12–month FMLA leave year.

18

supervisors neither notified the human resources division of Farver's request nor provided Farver with information regarding her rights and obligations under FMLA.

CHC contends that, regardless of her inquiry into leave under the FMLA, Farver would have been terminated because of the July 16, 2009 error. CHC's argument is premised on its contention that there is no causal connection between Farver's request for leave and her termination. Inasmuch as the argument that a causal connection does not exist has been rejected, the present argument likewise fails. Whether CHC's proffered reason for termination — poor performance — is believable or not is a disputed fact to be determined by the trier of fact.

CHC further maintains that the person who made the decision to terminate her, Katherine Frey, was aware of Farver's request for FMLA leave. However, although Frey and Hopkins may have been unaware of Farver's FMLA request, they both consulted with Simpson and Hetrick, who did have such knowledge. Moreover, Frey acknowledged that Simpson and Hetrick had input in the decision to terminate Farver, and, in fact, recommended that course of action. Consequently, it cannot be concluded that CHC's decision to terminate Farver was unrelated to any FMLA request. Accordingly, summary judgment is not warranted on this issue.

19

Farver has adduced a prima facie case of interference under the FMLA.
With respect to the first and second elements, there is no dispute that Farver was
an eligible employee under the FMLA and that CHC was an employer subject to
the FMLA's requirements. With respect to the third element, it is undisputed that
Farver was entitled to FMLA leave. Similarly, there is no issue with the fourth
element, inasmuch as Farver testified that she told Simpson that she would need
take leave in light of the Hetrick's directive that she return to the office as of
August 5, 2009.[7] As noted above, notice of the employee's intent to take leave
need not be expressed by the employee specifically as FMLA leave. The fifth
element is also established as it cannot reasonably be contested that Farver's
termination foreclosed her entitlement to benefits such as FMLA leave.

It is therefore recommended that the motion for summary judgment be
denied as to Farver's FMLA interference claim.

---

[7] Farver's initial situation of working from home may also state an interference claim if
the fact-finder concludes this arrangement was in response to a leave request by Farver.

20

**V. Recommendation**

        Based on the foregoing, it is respectfully recommended that the motion for summary judgment (Doc. 16) be denied.

        Signed March 2, 2012.

MILDRED E. METHVIN
U. S. MAGISTRATE JUDGE